UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 19 2008
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES OF AMERICA )
)
v. ) Criminal Action No. 94-193 (RCL)
) Civil Action No. 05-635 (RCL)
ALONZO GIBSON, )
)
Defendant. )
)

## MEMORANDUM OPINION

This matter comes before the Court on Defendant's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [319] as well as Defendant's related motions of renewal [322] [326] and Defendant's motion [327] and renewed motion [355] to appoint counsel. Upon full consideration of the motions, opposition briefs, replies, the entire record herein, and applicable law, the Court finds that all of Defendant's motions are DENIED.

### I.   BACKGROUND

Defendant claims that he was denied effective assistance of counsel at the pre-trial, trial, sentencing, and appeal stages of the criminal case in which he was convicted of possession with intent to distribute more than 5 kilograms of cocaine under 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii), and conspiracy to possess with intent to distribute more than 5 kilograms of cocaine under 21 U.S.C. § 846. Defendant also claims that this Court must revisit the issues previously decided on appeal as a result of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

**A. Factual Background**

The D.C. Circuit has summarized the factual background and procedural history of the

case:

> ... Gibson was involved in arranging for Federal Express to ship from Los Angeles two boxes containing cocaine, one to an apartment in Silver Spring, Maryland and one to an address in the District of Columbia. The government's evidence showed that three men, who claimed not to be together although they conversed together, entered a Federal Express office in Los Angeles on April 14, 1994. Two of the men each carried a box, and the third man leaned on the counter. Gonzaver Braziel, a Federal Express employee who processed one of the packages, identified Gibson in a photo array as possibly being the third man and at trial identified Gibson as that man. After the three men left, Federal Express employees, whose suspicions were aroused by the behavior of the three men and certain details of the shipments, notified security personnel, who determined, upon x-raying the boxes, that they appeared to contain drugs. Federal Express employees opened one box and found a white powdery substance. The box was resealed, and both boxes were shipped to Federal Express headquarters in Memphis, Tennessee, and then to the District of Columbia, where Federal Express delivered the two boxes to United States Drug Enforcement Administration ("DEA") agents.
>
> After searching the boxes pursuant to search warrants, DEA agents found that the powdery substance field-tested positive for cocaine: the box addressed to Maryland contained 2.994kg of 86% pure cocaine hydrochloride, and the box addressed to the District of Columbia contained 3.007kg of 90% pure cocaine. DEA agents, dressed as Federal Express employees, delivered the Maryland box, which indicated the sender was "Greg Smith" and the addressee was "Larry Davis," to the Maryland address, which turned out to be an apartment rented by Fatoumata Doumbia, Gibson's girlfriend. A few minutes after delivery, DEA agents executed a search warrant for the apartment. They found Gibson in a bedroom bending over the box that had just been delivered; with him were two pink sender's receipts, one for each of the boxes sent from Los Angeles. Also in the bedroom were two identification cards that bore Gibson's photograph, one showing the name "Greg Smith" and the other "Larry Davis." Gibson told agents that the box belonged to him and that he had been instructed to call an answering service upon delivery and say that "Snoop-Doggie-Dog" had called, and someone would call back and tell him where to deliver it. Gibson also told agents that the box contained marijuana. At trial, Doumbia testified about Gibson obtaining the fake identification cards and confirmed that Gibson had gone to Los Angeles twice in April 1994, calling her on April 15, 1994, to pick him up at the airport. She also testified that she gave the box to Gibson because he had told her he was expecting it.
>
> The second box listed the sender as "Denise Jones" and was addressed to

2

"Twanna Jones" at an apartment in the District of Columbia. Vi-Ki Dennis Taylor, Gibson's codefendant, met the agent outside of the apartment and offered to accept delivery for Twanna Jones, whom he claimed was his sister. The agent refused, left, and later returned and delivered the box to Twanna Jones, who said the package was for Taylor. Before DEA agents could execute a search warrant, Twanna Jones and Taylor drove off with the box in a car registered to Antoine Jones, Twanna's brother, who had told her to expect a package for Taylor to be sent to her. Taylor was later arrested at his own apartment in Maryland, and DEA agents found the empty box nearby. The DEA agents also found 992.4 grams of 88% pure cocaine hydrochloride in the trunk of the car Taylor had been driving, along with a notebook containing addresses for "Greg Smith" and "Larry Davis," the names on Gibson's false identifications, one of which was the Maryland address at which Gibson had been arrested. A search of Antoine Jones' apartment in Virginia later uncovered supermarket and insurance cards in Gibson's name, as well as a yellow sticker and a napkin each bearing the Maryland address where Gibson had been arrested.

Gibson and Taylor were indicted on two counts: possession of with intent to distribute, see 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii), and conspiracy to possess with intent to distribute, see id. § 846, more than five kilograms of cocaine. Pursuant to then-prevailing precedent in this circuit, the jury was not instructed to determine the relevant drug quantity beyond a reasonable doubt, only whether Gibson possessed or conspired to possess "a detectable or measurable amount of cocaine." The jury returned its verdict on November 9, 1994, finding Gibson guilty of both counts. On February 8, 2002, the district court sentenced Gibson to concurrent terms of 240 months imprisonment, to be followed by concurrent three-year terms of supervised release, and imposed a special assessment of $ 50 on each count.

*United States v. Gibson*, 353 F.3d 21, 23-24 (D.C. Cir. 2003) (internal citations omitted).

Following his loss on appeal, Defendant filed a motion under 28 U.S.C. § 2255, as well as related motions of renewal, claiming that he was denied effective assistance of counsel at the pre-trial, trial, sentencing, and appeal stages of the criminal case. Defendant also claimed that the *Booker* decision mandates that this Court revisit issues previously decided in this case.

**B. Legal Principles**

In considering a Section 2255 Motion, the Court is "authorized to grant relief only if [it]

determine[s] that the challenged sentence resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992). In addition, "in a § 2255 collateral challenge, [a defendant], in order to gain relief under any claim, is obliged to show a good deal more than would be sufficient on a direct appeal from his sentence." *Id.*

## II.   ANALYSIS OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Defendant's Section 2255 Motion and Supporting Memorandum raise numerous claims of ineffective assistance of counsel against six attorneys who represented him at various points in his case. Defendant raises claims of ineffective assistance of counsel by attorneys Barry Coburn (pretrial), Michael Olshonsky (pretrial), Charles Stow (pretrial, trial, and sentencing), James Rudasill (sentencing), Jonathan Zucker (sentencing), and Jonathan Katz (appeal). After discussing the relevant legal principles, Defendant's various claims will be considered and addressed in chronological order of their occurrence.

### A. Legal Principles

In considering claims of ineffective assistance of counsel, the Court is guided by *Strickland v. Washington*, which holds that the right to effective assistance of counsel is guaranteed by the Sixth Amendment. 466 U.S. 668, 686 (1984). *Strickland* provides a two prong test for determining if a criminal defendant's Sixth Amendment rights to effective assistance of counsel have been violated: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. In order for defendant to prevail on his claims of ineffective

assistance of counsel, defendant must satisfy both prongs by showing both deficient performance and prejudice to the defendant. *Id.*

To meet the first prong, deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* In considering claims of deficient performance, "the proper standard for attorney performance is that of reasonably effective assistance" or "reasonableness under prevailing professional norms." *Id.* at 687-88. To meet this standard, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" *Id.* at 688. The *Strickland* court further explains that:

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690.

To meet the second prong, prejudice to the defendant, a defendant must show "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Aside from cases involving allegations of a conflict of interest, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice . . . the defendant must show that they actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. A

defendant need not show that counsel's deficient performance more likely than not altered the outcome, but must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In addition, a Court "must consider the totality of the evidence before the judge or jury." *Id.* at 695. In so considering, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

### B. Defendant's Claim of Ineffective Assistance Related to Purported Untimely Challenge of the Faulty Indictment and Waiver of Speedy Trial

Defendant claims that Mr. Coburn provided ineffective assistance of counsel which "resulted in the untimely challenge of the faulty indictment...and waiver of a speedy trial." Def.'s Mem. at 9. However, Defendant offers no explanation in his initial Memorandum in support of his Section 2255 Motion for how the indictment was "faulty." In Defendant's Reply Memorandum [342], Defendant revises his contention, and states that Mr. Coburn "failed to acknowledge the defective indictment." Def.'s Reply Mem. at 3. Defendant also states that the initial description of the suspects sending the package, "a black male and female," differed from a later description of "three black males." *Id.* Defendant also states that indictment originally charged defendant with crack cocaine offenses for several months until it was corrected. *Id.*

Even if Defendant's claims about his counsel's deficient performance in this area are true and correct, Defendant has shown no prejudice to his case. Defendant does not explain in either Memorandum how Mr. Coburn's waiver of speedy trial prejudiced Defendant's case, so he fails to meet his burden to show "an adverse effect on the defense" with respect to this claim. *Strickland*, 466 U.S. at 693. Defendant has conceded that the indictment was corrected with

regard to the crack cocaine charges, so there is also no prejudice with respect to that claim. With regard to Defendant's other allegations, the Defendant has not proffered any evidence of an adverse effect that these alleged errors had on his defense, and "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. In addition, as previously noted, when considering whether a Defendant has been prejudiced by deficient performance of counsel, a Court "must consider the totality of the evidence before the judge or jury" and should note that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 695-96. Here, there was substantial evidence presented of Defendant's guilt. In finding that it was "clear" that Gibson's conviction did not rest on insufficient evidence, the D.C. Circuit summarized the substantial amount of evidence against the Defendant:

> Gibson was arrested with the Maryland box in his possession, and the jury heard testimony both that he had been expecting the box and that he intended to deliver it to a third party. Moreover, he had sender's receipts from both the Maryland and District of Columbia boxes, and the jury heard testimony that he had traveled to Los Angeles around the time they were shipped. He was found with false identifications matching the names of the shipper and addressee of the Maryland box. The recipients of the District of Columbia box were also found with a notebook containing the names on Gibson's false identifications and an insurance card and a supermarket card issued in Gibson's own name as well as a napkin matching the address to which the Maryland box was delivered. A reasonable jury could conclude beyond a reasonable doubt, on the evidence presented, that Gibson possessed and conspired to possess cocaine with the intent to distribute it.

*United States v. Gibson*, 353 F.3d 21, 24-25 (D.C. Cir. 2003) (internal citations omitted). This is a case, in other words, where there is "overwhelming record support" for the defendant's guilt. *Strickland*, 466 U.S. at 696. Therefore, even if Defendant's allegations were true, Defendant does not raise issues substantial enough to overcome the mountain of evidence of Defendant's

guilt presented at trial before this Court and in no way "undermine[s] confidence in the outcome" of his trial. *Id.* at 694. Defendant therefore fails to meet his burden of proof on these claims.

### C. Defendant's Claim of Ineffective Assistance Relating to Purported Failures to Adequately Investigate the Case

Defendant claims that Mr. Olshonsky and Mr. Stow provided ineffective assistance of counsel by failing to adequately investigate the case. Def.'s Mem. at 9-11. In particular, defendant objects to the failure of counsel to interview or otherwise investigate certain eyewitnesses from Federal Express and the FBI. *Id.* Defendant alleges certain weaknesses or inconsistencies in the testimony or potential testimony of these witnesses. *Id.* Defendant alleges that counsel abdicated their responsibility to represent him by failing to subpoena "crucial government witnesses" and "rely[ing] on the prosecutor to do the defense's job." *Id.* at 10.

However, while "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. And this Court, in turn, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Such difficult decisions as how to allocate investigative resources, which avenues of investigation are worth pursuing further, which witnesses to subpoena or call to the stand, and whether to present an affirmative defense or to simply to make the government to meet its burden are pre-trial and trial strategy issues about which competent counsel might reasonably disagree. As the *Strickland* Court noted: "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id.* at 689. Even if Defendant's claims are true, Defendant has not overcome the presumptions that his

counsel's alleged acts or omissions were part of a sound trial strategy, or that they fell within the wide range of reasonable professional assistance.

In addition, the record here indicates that Mr. Stow had, in fact, retained two pretrial investigators, that sentencing counsel, Mr. Rudasill, retained an investigator to investigate defendant's post-conviction claims regarding witnesses, and that having reviewed the evidence produced by said investigation, Mr. Rudasill determined that Mr. Stow would not have gained any useful information for Defendant's case had he interviewed these Federal Express employees. *See* Gov't Opp'n at 11 n.2 (providing multiple citations to the transcripts of the proceedings where these developments were discussed before this Court). As such, Defendant fails to meet his burden of demonstrating that the performance of his attorneys was unreasonable under prevailing professional norms.

Even if Defendant's claims about his counsel's deficient performance in this area were true and correct, Defendant has shown no prejudice to his case. The D.C. Circuit has held that:

> to show prejudice, a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result."

*United States v. Askew*, 88 F.3d 1065, 1076 (D.C. Cir. 1996). In alleging prejudice, Defendant relies on, as evidentiary exhibits, such things as the implied answer to a leading question from his trial counsel in cross-examination of a witness. *Cf.* Def.'s Mem. at 10 (stating that the computerized Federal Express security form "could be the one thing that could corroborate what took place on the west coast."); 11/03/94 Tr. 275 (submitted as Exhibit VI to Defendant's Memorandum) (Counselor Stow's overruled question regarding the computerized security form

"And that would be the one thing that could corroborate what happened in this case, is it not?"). Additionally, Defendant states that the Federal Express security form referenced in the question above "may h[o]ld much more detail of the accus[ations] and events of that day." Def.'s Reply Mem. at 3. Defendant also states that, had his counsel taken a trip to California to interview potential witnesses, he would have "learned what actually occurred that day." *Id.*

However, speculative claims about the importance of evidence based on implied answers to leading questions asked by his own counsel on cross-examination of a government witness and vague assertions that a form might have more details or that counsel might have found out "what actually occurred" fall well short of Defendant's burden to make a comprehensive showing as to what exculpatory or otherwise beneficial information would have been produced by such an investigation. By contrast, as mentioned above, the record supports the fact that Defendant's sentencing counsel determined upon his own investigation that no useful information would have been obtained by the interviews that Defendant claims should have been conducted. Finally, when considering claims of prejudice, the Court must remain mindful of the mountain of evidence on the record for the defendant's guilt, discussed *supra* at p. 7. Taking all of these factors into consideration, it is clear to the Court that Defendant fails to meet his burden of showing that prejudice resulted from the alleged deficient performance by his counsel in this area.

### D. Defendant's Claim of Ineffective Assistance Relating to Purported Failures to Supplement Pretrial Motions and Adequately Prepare for Trial

Defendant alleges that Mr. Stow failed to supplement pretrial motions filed by Mr. Olshonsky, and that Mr. Stow was unprepared to try the case. Def.'s Mem. at 11. Defendant offers statements by Mr. Stow excerpted from the hearing transcripts that he believes support his

claims. Def.'s Mem. at 11, Ex.VIII-X. The government responds by noting that Mr. Gibson indicated to this Court that he was satisfied with Mr. Stow's performance in a pretrial hearing on October 31, 1994. Gov't Opp'n at 11-12. The Defendant claims that at the time he made that statement to the Court, he did not know he had been misled by Mr. Stow into thinking that Mr. Stow had filed his own motions rather than Mr. Olshonky's motions. Def.'s Reply Memo. at 6.

In evaluating the Defendant's claims, this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The quotations offered by the Defendant as evidence of ineffective assistance of counsel do not necessarily appear to evidence performance "outside the wide range of professionally competent assistance." *Id.* at 690. Criminal defendants do not have a right to perfect assistance of counsel, but to "reasonably effective assistance." *Id.* at 687. Furthermore, counsel's decision not to focus his limited trial preparation time on supplementing pretrial motions previously submitted by competent counsel "falls within the wide range of reasonable professional assistance," and is a decision of the sort that "might be considered sound trial strategy." *Id.* at 690.

Even if Defendant's claims about his counsel's deficient performance in this area are true and correct, Defendant has shown no prejudice to his case. The Defendant's claims of errors by his counsel "are subject to a general requirement that the defendant affirmatively prove prejudice . . . the defendant must show that they actually had an adverse effect on the defense. It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. In addition, the Defendant carries the burden of showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

11

proceeding would have been different." *Id.* at 694. The Defendant here has done no such thing. Defendant states that "Attorney Stow's late actions to attack government witnesses on cross-examination could have rendered a different result had he investigated and submitted his own motions." Def.'s Mot. at 11. But the Defendant fails to offer any explanation for why this is so. The Defendant also does not explain why Mr. Stow's motions would have been superior to Mr. Olshonsky's motions, or how Mr. Olshonsky's motions fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As before, when considering claims of prejudice, the Court must remain mindful of the mountain of evidence on the record for the defendant's guilt, discussed *supra* at p. 7. Taking all of these factors into consideration, it is clear to the Court that Defendant fails to meet his burden of showing that prejudice resulted from the alleged deficient performance by his counsel in this area.

### E. Defendant's Claim of Ineffective Assistance Relating to Defendant's Career Offender Status

Defendant's primary claim in his Section 2255 motion is that he was improperly assigned career offender status in contravention of the holding of *United States v. Price*, 990 F.2d 1367 (D.C. Cir. 1993). Defendant asserts that Mr. Olshonsky and Mr. Stow provided ineffective assistance of counsel by misinforming him about whether he faced career offender status if he accepted a plea bargain offer, which led him to reject a plea offer that he would have otherwise accepted. Def.'s Mem. at 4-6. Defendant also contends that Mr. Rudasill and Mr. Zucker ignored or misunderstood *Price*, and allowed him to be sentenced as a career offender when he should not have been so sentenced. Def.'s Mem. at 5-8.

Defendant is mistaken. In *Price*, the D.C. Circuit held that the Sentencing Commission's Sentencing Guidelines and Application Notes exceeded their statutory authority under 28 U.S.C. §

994(h) by including conspiracy to commit a controlled substance violation as a controlled substance offense for purposes of determining career offender status. *See* 990 F.2d at 1370. However, as the government points out in its brief, the Defendant here, unlike the defendant in *Price*, was convicted of both conspiracy and possession with intent to distribute more than 5 kilograms of cocaine. *See id.* at 1368; Gov't Opp'n at 5-6. Defendant's eligibility for career offender status rests on the conviction for possession with intent to distribute, not on the conspiracy charge as Defendant claims. The relevant career offender statute at issue in *Price* was 28 U.S.C. § 994(h), which states that:

> (h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and--
>   (1) has been convicted of a felony that is--
>     (A) a crime of violence; or
>     (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46 [46 USCS §§ 70501 et seq.]; and
>   (2) has previously been convicted of two or more prior felonies, each of which is--
>     (A) a crime of violence; or
>     (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46 [46 USCS §§ 70501 et seq.].

Defendant qualified for career offender status because, having already satisfied the requirements of 28 U.S.C. 994(h)(2), he was convicted of an offense under 21 U.S.C. § 841, which is listed in 28 U.S.C. 994(h)(1)(B) as a qualifying offense. Therefore, *Price* is inapposite and Defendant's attorneys did not render ineffective assistance of counsel in advising defendant that he faced career offender status and in allowing him to be sentenced as a career offender. Accordingly, Defendant's claims that he rejected a plea offer that he would have accepted but for deficient

performance of counsel, and that he was sentenced inappropriately as a career offender due to deficient performance of counsel both fail.

### F. Defendant's Claim of Ineffective Assistance Relating to Sentencing Delay

In a related claim, Defendant contends that Mr. Rudasill, his sentencing counsel, erred by "allow[ing] this case to go unattended, in limbo and not scheduled for the court calendar for (4) years, leaving defendant to file pro se motions to receive a court date." Defendant alleges that as a result of his counsel's purported error in analyzing *Price*, combined with the prolonged period before sentencing, "defendant was sequentially sentenced under the guidelines that did not exist when his offense was committed." Def.'s Mem. at 5. Defendant claims that this amounted to a retroactive violation of the Ex Post Facto Clause. Def.'s Mem. at 7-8.

In addressing defendant's claim of prejudice due to sentencing delay, this Court notes that when the D.C. Circuit reviewed a previous claim of sentencing delay by Defendant in his criminal appeal, it found that "Gibson, far from being prejudiced, actively contributed to [the delay] and never requested prompt sentencing. . . . [Gibson] filed multiple motions and requests for continuances and repeatedly resisted sentencing by the district court." *Gibson*, 353 F.3d at 22. And, as the government pointed out in its brief, it appears that Defendant actually benefitted from the sentencing delay. *See* Gov't Opp'n at 8-9. The delay permitted Defendant to be sentenced after the Supreme Court decided *Apprendi v. New Jersey*,, which held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). Because the jury had not made findings about the quantity of cocaine in Defendant's possession, Defendant could not be sentenced under any statute for which a specific

drug quantity was an element, and was instead sentenced under 21 U.S.C. § 841(b)(1)©. *See* Gov't Opp'n at 9. As a result, Defendant's offense level was reduced from 37 to 32, and his sentence was capped at a statutory maximum of 240 months. *See id.* Under these circumstances, Defendant cannot meet his burden of demonstrating prejudice due to delay.

Further, Defendant's contention that post-*Price* revised Sentencing Guidelines were applied to him *ex post facto* depends on his mistaken contention that *Price* made him ineligible for career offender status under the then-current guidelines. *See supra* p. 12-13. Thus, his *ex post facto* claim fails for the reasons stated above in the previous subsection..

### G. Defendant's Claim of Ineffective Assistance on Appeal

Defendant claims that Mr. Katz provided ineffective assistance of counsel in defendant's appeal. Defendant's claim appears to rest primarily on the fact that "Defendant presented to counsel the entire of package of what's contained in this motion" and "Attorney Katz rejected it in its entirety." Def.'s Mem. at 8. Defendant also rehashes the sentencing delay arguments addressed above. *Id.* As Defendant raises no new issues with respect to his claims of Mr. Katz's ineffective assistance of counsel on appeal, his claims fail for the same reasons previously stated.

### III. ANALYSIS OF CLAIM UNDER *UNITED STATES V. BOOKER*

Defendant states that "the Booker decision . . . has now abrogated this Court's previously settled law." Def. Mem. at 2. Defendant further claims that "this Honorable Court is bound, by the aforesaid decision, including the identical line of cases, to re-visit the issues in this case and apply the current case law as mandated by the United States Supreme Court." *Id.* at 2-3.

As the government notes, the Defendant's convictions became final in March 2004, ninety days after they were affirmed on appeal in December 2003, and *Booker* was not decided until

January 2005. *See* Gov't Opp'n at 14; *see also Gibson*, 353 F.3d 21. Therefore, in order for *Booker* to apply to Defendant's present collateral attack on his conviction, it would have be applied retroactively. However, the Supreme Court has held that "a new rule is not 'made retroactive to cases on collateral review' unless the Supreme Court holds it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). The Defendant presents no citation for a Supreme Court holding that *Booker* may be applied retroactively on collateral attack, and this Court is aware of none. This Circuit has held that *Booker* does not apply retroactively on collateral review. *See In re Fashina*, 486 F.3d 1300, 1306 (D.C. Cir. 2007); *In re Zambrano*, 433 F.3d 886, 888 (D.C. Cir. 2006); *In re Hinton*, 125 Fed. Appx. 317 (D.C. Cir. 2005). In addition, as the Fourth Circuit reports, "[n]ine circuit courts of appeals have considered this issue and have held that *Booker* does not apply retroactively to cases on collateral review." *United States v. Morris*, 429 F.3d 65, 66 (4th Cir. 2005) (joining those nine circuits). Therefore, since this Court cannot apply *Booker* retroactively on collateral review, Defendant's claim fails.

### IV.   HEARING UNNECESSARY

In a Section 2255 proceeding, Courts are to grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing Section 2255 Proceedings clarifies that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." *See also United States v. Sayan*, 968 F.2d 55, 66 (D.C. Cir. 1992) (Rule 4(b) "is especially applicable if the same judge who tried the case rules on the section 2255 motion as occurred here." Rule 8(a) of the Rules Governing Section 2255 Proceedings further clarifies that "[i]f the motion is not dismissed,

the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." In addition, D.C. Circuit precedent establishes that "[w]hen a § 2255 motion involves ineffective assistance of counsel, a hearing is not required if the district court determines that the 'alleged deficiencies of counsel did not prejudice the defendant.'" *United States v. Weaver*, 234 F.3d 42, 46 (D.C. Cir. 2000) (quoting *Sayan*, 968 F.2d at 66.)

This Court did sit for the underlying trial and is familiar with the evidence presented at same. This Court has reviewed the claims made by Defendant and has found that the Defendant is not entitled to relief because the alleged deficiencies of counsel did not prejudice Defendant's case, as discussed in detail above. In addition, the matters raised by the Defendant relating to *Price* and *Booker* are purely legal matters and do not require an evidentiary hearing. Therefore, this Court finds that there is no need to schedule an evidentiary hearing in this matter. As such, there is also no need to appoint counsel for defendant. *See* Rules Governing Section 2255 Proceedings 6(a) and 8(c) (a judge must appoint counsel in a 2255 proceeding only "[i]f necessary for effective discovery" or "[i]f an evidentiary hearing is warranted").

### V.    CONCLUSION

It is plainly apparent from Defendant's motions, exhibits, and filings that he is unable to show that his sentence "resulted from 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" *Pollard*, 959 F.2d at 1020. Therefore, for the reasons stated above, the Court will DENY Defendant's Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [319]. The Court will DENY Defendant's related motions of renewal of Defendant's

Section 2255 Motion [322] [326]. The Court will also DENY Defendant's motion [327] and renewed motion [355] to appoint counsel.

A separate order shall issue this date.

SO ORDERED.

_____      9/19/08
Royce C. Lamberth, Chief Judge     Date